# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
            **Plaintiff,**

**v.**                                                    **Case No. 05-CR-289**

**VANESSA LEDEZMA**
            **Defendant.**

---

### SENTENCING MEMORANDUM

In the summer of 2005, defendant Vanessa Ledezma, then twenty-one years old and without a criminal record, agreed to accompany her boyfriend, Juan Curiel, and his friend, Santiago Meraz, on a trip from Wisconsin to California and back. Curiel stated that the purpose of the trip was to visit his relatives in Los Angeles, but as defendant later learned, he also planned to bring cocaine back to Wisconsin. Defendant's role in this excursion was simply to help drive; she did not negotiate the transaction, handle the cocaine or expect any profit. The crime was thwarted when a suspicious Wyoming state trooper pulled the three over, obtained consent to search and located the cocaine.

The government charged defendant, along with Curiel and Meraz, with conspiracy to distribute five kilograms or more of cocaine. 21 U.S.C. § 841(a)(1) & (b)(1)(A). Defendant pleaded guilty to the charge and agreed to cooperate against Curiel and Meraz. The probation office prepared a pre-sentence report ("PSR") in anticipation of her sentencing, which set her offense level at 23 (base level 30, U.S.S.G. §§ 2D1.1(c)(4) & 2D1.1(a)(3), minus 2 under the safety valve provision, § 2D1.1(b)(11), minus 2 for minor role in the offense, § 3B1.2, and minus 3 for acceptance of responsibility, § 3E1.1) and her criminal history category at I,

producing an imprisonment range of 46-57 months under the advisory sentencing guidelines.

The government moved for a sentence reduction under U.S.S.G. § 5K1.1 to reward defendant for her substantial assistance in the prosecution of her co-defendants, and defendant requested a non-guideline sentence under the 18 U.S.C. § 3553(a) factors. In this memorandum, I provide written reasons for the sentence imposed. See 18 U.S.C. § 3553(c).

## I.  SENTENCING PROCEDURE

In imposing sentence in the present case, I followed a three-step procedure. First, I calculated the advisory sentencing guideline range. See United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007) (stating that post-Booker the district court must first properly calculate the guidelines sentence). The parties agreed with the guideline application in the PSR, which I found correct and accordingly adopted. Second, I considered the government's departure motion under U.S.S.G. § 5K1.1, awarding a 6 level reduction. Finally, I imposed a sentence of one day in prison follow by three years supervised release with a condition of six months home confinement upon consideration of all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Jimenez-DeGarcia, 481 F. Supp. 2d 946, 950 (E.D. Wis. 2007) (following a three-step sentencing procedure); see also Rita v. United States, 127 S. Ct. 2456, 2465 (2007) (stating that the sentencing judge will normally begin by considering the PSR and the guidelines, then hear arguments for departures under the Commission's policy statements and/or a non-guideline sentence based on § 3553(a) considerations).

## II.  SUBSTANTIAL ASSISTANCE MOTION

### A.      5K1.1 Factors

In ruling on a substantial assistance motion under U.S.S.G. § 5K1.1, the court considers

2

five factors:

> (1) . . . the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

> (3) the nature and extent of the defendant's assistance;

> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

> (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

The guideline directs the court to give substantial weight to the government's evaluation of the extent of the defendant's assistance, U.S.S.G. § 5K1.1 cmt. n.3, but the extent of the departure is within the court's discretion. In attempting to quantify a substantial assistance departure, I typically grant something on the order of a 2-level adjustment for each factor found to be fully present, with a lesser reduction for those factors partially present. United States v. Matthews, 463 F. Supp. 2d 916, 918 (E.D. Wis. 2006).

**B.    Discussion**

In the present case, I awarded a 2 level reduction under the first factor because defendant's assistance was significant in getting Meraz and Curiel to plead guilty to the crime. The government indicated that she was willing to testify against them at trial, and her statements were released to them in discovery. She also came to court to testify against Meraz and Curiel at their sentencing hearings, as they were seeking to portray themselves as new to the drug world and eligible for the safety valve. Although the parties were able to reach resolution of that matter at the last minute, the government believed that defendant's

3

willingness to testify and her presence in court were of great assistance. Meraz and Curiel both agreed to substantial sentences and to waive their right to appeal.

Under the second factor, I also awarded 2 levels because the government found defendant completely truthful and reliable. Under the third factor, I awarded 1 level because defendant's assistance was limited to providing information and agreeing to testify; she was not actually required to testify, nor did she engage in other pro-active cooperation.

Under the fourth factor, I awarded 1 level based on the pressure defendant's co-actors placed upon her not to cooperate. The government indicated that while she was detained in Wyoming, Curiel and Meraz's families visited her, put money in her canteen, and appeared as if they wanted her not to cooperate. I also considered the fact that defendant cooperated against her then-boyfriend, not an easy thing to do. I awarded no reduction under the fifth factor, since it appeared that defendant did not fully cooperate until after the case was brought in Milwaukee and she retained her current counsel.

Therefore, I awarded a total reduction of 6 levels, making the range 24-30 months.

## III. IMPOSITION OF SENTENCE UNDER § 3553(a)

**A.      3553(a) Factors**

"When sentencing a defendant, a district court must consider all sentencing factors enumerated in 18 U.S.C. § 3553(a)." United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007). Those factors include:

> (1)     the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)     the need for the sentence imposed–
>
> (A) to reflect the seriousness of the offense, to promote respect for the law,

4

and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory guideline range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id. In making this determination, the district court may not presume that the guideline sentence is the correct one or elevate the guidelines above the other factors in the statute. See, e.g., United States v. Schmitt, 495 F.3d 860, 864-65 (7th Cir. 2007); United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007); United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006), cert. denied, 127 S. Ct. 3055 (2007). Rather, the court must be guided by the statute's "parsimony provision" in imposing sentence. United States v. Santoya, 493 F. Supp. 2d 1075, 1077 (E.D. Wis. 2007).[1]

---

[1]Because the safety valve applied, I was able to give full consideration to the § 3553(a) factors. See 18 U.S.C. § 3553(f) (stating that if the safety valve applies the court shall impose a sentence "without regard to any statutory minimum sentence").

5

**B.     Discussion**

**1.     Nature of Offense**

As indicated above, defendant assisted her then-boyfriend, Curiel, and his friend, Meraz, transport five kilograms of cocaine from California to Wisconsin. The cocaine was discovered when a Wyoming state trooper pulled them over and found the secret compartment containing the drugs.

The parties agreed that defendant's role was quite limited: she did not plan the offense or profit from it. Her task was basically to help drive, as she had a valid driver's license and the others did not. At some point, she knew or learned that the real purpose of the trip was to bring cocaine back to Wisconsin, but there was no indication that she knew how much. There was also no indication that she had previously engaged in this sort of conduct. As the govern aptly stated in its 5K1.1 motion, defendant was young and clearly out of her league. Her motivation for going to California, as the government also stated, was more to "run off" with Curiel than to engage in criminal activity. Thus, while the crime was serious, defendant's role in it was quite mitigated.

**2.     Character of Defendant**

At the time of sentencing, defendant was twenty-three years old, and as noted above, she had no prior record whatsoever. Her background was overwhelmingly positive. She had a good childhood and was raised by parents who cared for and protected her, and remained supportive. She graduated high school and maintained steady employment throughout her life. She was also active in her church and volunteered with various community organizations including MICAH, Voices of the Border, Outreach for Hope and Mexican Fiesta. I received

6

numerous letters attesting to her positive qualities and several additional statements at the sentencing hearing, which uniformly depicted someone totally atypical for this type of crime. Defendant's pastor indicated that defendant was very important to the community and a blessing to his congregation. A member of the church stated that defendant regularly volunteered with children and the poor. A Head Start site supervisor wrote that defendant assisted the children in her program at special events. A MICAH director wrote that defendant was one of the primary leaders responsible for organizing "MICAH en Espanol."

It was apparent, given her background, that defendant's involvement in this offense was an aberration. But defendant took additional steps to get her life back on track following her arrest in this case, marrying a man she met at her church who was studying to become a minister, giving birth to a child, working full-time, cooperating in the government's investigation and disassociating herself from Curiel and Meraz. At sentencing, defendant indicated that she also spoke to groups of young women, warning them to avoid the mistakes she had made.

### 3. Purposes of Sentencing

Cocaine trafficking is obviously a serious crime, but defendant was not a drug dealer; she did not plan the offense or profit from it. She made a foolish decision to accompany a boyfriend while he and a cohort transported cocaine. There was really nothing more to it than that, so I did not find prison necessary to provide just punishment given defendant's specific conduct and motivation. See 18 U.S.C. § 3553(a)(2)(A). I also saw no indication that the public had to be protected from defendant. Her involvement in this case stemmed from her relationship with Curiel, which had been severed; she had no criminal propensity herself. See 18 U.S.C. § 3553(a)(2)(C). Nor did I see a need for imprisonment to deter defendant from re-offending. Based on my observations, it was clear that the criminal process had a profound

7

impact on defendant, and I saw no probability that she would repeat criminal conduct.  <u>See</u> 18

U.S.C. § 3553(a)(2)(B).[2]  Finally, defendant had no correctional treatment needs.  She had no

history of substance abuse, was educated and had a solid work record.  She also had a young

child who needed her.  <u>See</u> 18 U.S.C. § 3553(a)(2)(D).

### 4.    Consideration of Guidelines and Types of Sentences Available

The guidelines called for a term of 24-30 months, after the § 5K1.1 departure.  But for

the reasons stated, a prison sentence was not necessary to satisfy any of the purposes of

sentencing in this case.  Section 841(b)(1)(A) does not permit probation, but I nevertheless

fashioned an appropriate sentence to be served primarily in the community, <u>see</u> 18 U.S.C. §

3553(a)(3), one that provided for just punishment but recognized the positive and mitigating

factors discussed above.  Because the sentence was based on the unique circumstances of

this case, it did not create unwarranted disparity.  <u>See</u> 18 U.S.C. § 3553(a)(6).

## IV.  CONCLUSION

Therefore, for the reasons stated, I committed defendant to the custody of the Bureau

of Prisons for one day, which I found she had served.  I further ordered defendant to serve a

supervised release term of three years, with a condition of 180 days of home confinement.

Other conditions appear in the judgment.

Dated at Milwaukee, Wisconsin, this 19th day of November, 2007.
/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

[2]General deterrence in these types of cases seems unlikely.  <u>See</u> United States
Sentencing Commission, <u>Fifteen Years of Guideline Sentencing</u> 133-34 (Nov. 2004)
("Incapacitating a low-level drug seller prevents little, if any, drug selling; the crime is simply
committed by someone else.").

8